1
2
3
4

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
**FEB 2 7 2018**
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Binghamton

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

5
6
7
8
9
10
11

NANCY KANE                          )  Civil Action No.3:18-CV-074
                                    )
              Plaintiff,            )  TJM/DEP
                                    )
v.                                  )  Jury Trial Demanded
                                    )
CITY OF ITHACA,                     )  Complaint
                                    )
              Defendant             )

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**

Plaintiff alleges, upon personal knowledge as to herself

and upon information and belief as to others:

**NATURE OF THE ACTION**

1.  This is an action brought for:

    a. violation of the Americans with Disabilities Act

    (ADA);

    b. unsafe work conditions in violation of PESH/OSHA

        standards;

    c. wrong termination in violation of public policy;

    d. gender discrimination (Title VII);

    e. breach of contract; and

**THE PARTIES**

2. Plaintiff NANCY KANE is a resident of the County of Tompkins, State of New York.

3. Upon information and belief, Defendant City of Ithaca, is located at 108 E. Green Street, Ithaca, NY 14850.

**JURISDICTION AND VENUE**

4. The court has jurisdiction over this action because the complaint involves issues of federal law.

5. The United States District Court, Northern District is the proper venue for this action because the actions that violated plaintiffs' rights occurred within Tompkins County, within the boundaries of this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

6. On or about May 16, 2016 Plaintiff began working for Defendant as a Recreation Program Coordinator.

7. On or about October 28, 2016, Plaintiff was terminated by Defendant.

8. On or about June 23, 2017, Plaintiff received a right to sue letter from the Equal Employment Opportunity Commission (copy annexed hereto as Exhibit A).

9. On or about September 19, 2017 Plaintiff filed a complaint with the New York State Supreme Court Sixth Judicial District – Tompkins County.

10. On or about January 17, 2018, the court removed the case to the United States District Court for the Northern District of New York because plaintiff's claims involves claims for violations of federal statutes.

**FIRST CAUSE OF ACTION - VIOLATION OF ADA**

11. Plaintiff restates the claims made in paragraphs 1 through 10 of this Complaint as if restated here in full.

12. On or about October 25, 2016, at the Ithaca Youth Bureau (IYB) Plaintiff presented Defendant with documentation of a life-threatening disability (sleep apnea) requiring accommodations.

13. In response, Defendant told Plaintiff that a meeting would be held on Friday, October 28, to discuss performance issues.

14. Plaintiff requested union representation for the meeting, and asked that her request for accommodation be discussed.

15. Defendant refused both to discuss her request for accommodation and her request for union representation, calling her requests contentious.

16. After being subjected to open hostility from Defendant

Complaint

- 3

on that date, Plaintiff went to her sleep specialist later that day, and provided Defendant with a letter from that physician.  Other than acknowledging receipt of said letter, Defendant never met with Plaintiff to discuss her request for accommodations for her disability, or took any steps with regard to said request.

17.   By its failure to even engage into any discussion of accommodations for her disability, or consider any such accommodations, Defendant breached the ADA.

18.   Plaintiff was terminated by Defendant on October 28, 2016, only 3 days after making a claim for disability.

19.   Plaintiff's termination was an adverse employment action, and was both discriminatory and retaliatory, in violation of Title VII and the ADA.

**SECOND CAUSE OF ACTION - BREACH OF PESH/OSHA STANDARDS**

2o.   Plaintiff restates the claims made in paragraphs 1 through 10 of this Complaint as if restated here in full.

21.   At her own expense, Plaintiff KANE undertook Red Cross safety training in Lifeguarding, First Aid/CPR, and Responding to Emergencies.  She was trained in proper procedure for removal of hypodermic syringes.

Complaint

- 4

A hypodermic needle was found by a parent on a soccer field on or about September 18, 2016.  Plaintiff disposed of this pursuant to her training, although no sharps containers or other facilities for such disposal was provided by Defendant.  When she informed Defendant, she was told that she should have put it in an empty plastic bottle, and brought it to her home.

22. On September 25, 2016, a steel drum being used by park dog walkers for garbage disposal by Cass Park next to Cass Park bathroom shed was overflowing with dog waste, food, standing water, and trash. The next day, Plaintiff informed Defendant of this, and of the potential health hazard. In response, Plaintiff was told that her duties included emptying trash and maintenance of rest rooms (including restroom blockages and overflowing plumbing issues). Plaintiff had never been told this previously.

23. Plaintiff was told that maintenance of the park for trash was part of her responsibilities, or to order the soccer officials at the park (minors employed by Defendant) to clean the trash. She specifically asked for training to cope with broken glass, dead animals,

Complaint

- 5

insect and/or spider infestation, human waste

products, and used condoms – all of which were

problems at the park.  When she complained, she was

told that Defendant would send someone to help with

the trash, but that was never done.

24.  Despite her request, Plaintiff was never provided with

any training with regard to any of these issues by

Defendant, although she undertook Red Cross safety

training in Lifeguarding, First Aid/CPR, and

Responding to Emergencies, including proper procedure

for removal of hypodermic syringes, at her own

expense. Defendant subsequently requested additional

training from the City Safety and Health Officer,

which was not provided.

25.  According to the New York State Department of Labor

Safety and Health division fact sheet on Employee

Rights and Responsibilities under the New York State

Public Employee Safety and Health Act, an employee

must follow the OSHA safety and health standards and

any other regulations that apply to their own actions

and conduct on the job.

26.  Defendant's failure to provide Plaintiff any training

or assistance effectively prevented her from being

Complaint

- 6

able to follow New York State's Public Employee
Occupational Safety and Health Act of 1980, which
covers all public employees at the State and local
levels.  City of Ithaca HR personnel and Safety and
Health officer did not ensure that proper safety
procedures were implemented and followed, even after
having been made aware of the problems.

27. According to NYS 1910.1030(e)(2)(ii)(M), "A biosafety
manual shall be prepared and periodically reviewed and
updated at least annually or more often if necessary.
Personnel shall be advised of potential hazards, shall
be required to read instructions on practices and
procedures, and shall be required to follow them."

28. Also, from NYS 1910.1030(g)(2)(i), "The employer shall
train each employee with occupational exposure in
accordance with the requirements of this section.
Such training must be provided at no cost to the
employee and during working hours.  The employer shall
institute a training program and ensure employee
participation in the program."  Plaintiff was made to
take Red Cross Responding to Emergencies training at
her own expense outside of working hours.  The course
(and a First Aid course also paid for by KANE) did not

cover biohazard removal beyond hypodermic needles and blood spills.

29. In response to her requests for training and assistance, Defendant told Plaintiff that she was unable to intuit her job requirements after being on the job for several months, and that she could not be trusted.

30. On or about October 28, 2016, in response to a request, Plaintiff submitted a purchase request for a rolling trash bin and other waste disposal equipment. That day, after making said request, Plaintiff was terminated.

31. Plaintiff  believes that her firing was, in part, retaliation for her having sought proper training and equipment to complete a part of her job as assigned by her supervisor.  Her right to a safe workplace under OSHA and PESH were violated.

**THIRD CAUSE OF ACTION - WRONGFUL TERMINATION IN BREACH OF PUBLIC POLICY**

32. While working as the supervisor of the Cheerleading program, requirements that music used in cheer performances be legally licensed were being reiterated nationwide by USA Cheer in the wake of the

cheerleading music lawsuit, Sony Music Entertainment v. Extreme Traxx Productions et al(1:14-cv-00817), and the YFL (Youth Football League, of which Cheerleading was a part) competition would not allow any team to compete with unlicensed music (proof of license was required for competition registration). Plaintiff informed Defendant of the requirements and explained that the cheer squad would not be allowed to participate in the league competition without legal licensing.

33. Defendant dismissed her concerns, saying that music was always used throughout the recreation program without licensing and that nobody ever complained or got caught. Defendant recommended that she not pay for said licensing.

34. Plaintiff did pay for said licensing, as was required.

35. Defendant has claimed that a reason for her termination was her paying for said licensing.

36. Not obtaining a performance license would be in violation of Federal Law (The 1976 Copyright Act), which would have exposed the City of Ithaca to liability and the potential for fines up to $150,000 for *each occurrence* of using music for which the City

of Ithaca did not have the rights.

37. Plaintiff claims damages.

**FOURTH CAUSE OF ACTION – GENDER DISCRIMINATION**

38. Plaintiff restates the claims in paragraphs 1 through 10 as if restated here in full.

39. On or about July 26, 2016, Plaintiff was told that she would not given responsibility for working on the football league as part of her job, because she is a woman, and the other football league directors would not respect her.

40. Although not happy, Plaintiff agreed to work with the cheerleaders instead.

41. In early September, an issue arose at a football game involving the Cheer squad and an audience member. Plaintiff went immediately to the field to assess the situation and was collecting information from eyewitnesses. Jonathan Nixon a referee, refused to speak with her regarding the incident, and was verbally abusive and disrespectful to her.

42. Plaintiff filed a complaint with Michael Blakely-Armitage against Nixon as a result. Upon information and belief, no action was taken and no reprimand was issued; her complaint was ignored.

43. On September 27, 2016, Plaintiff met with John Oakley, longtime director of the IYB soccer program, as part of her supervisory duties, and told him of the above-reference requirement that she be responsible for the cleaning at Cass Park soccer practice fields. Oakley said no male had ever been told to do that, and none had ever done it.  He suggested KANE's gender was likely the reason she was expected to clean.

44. Upon information and belief, females are subjected to scrutiny and harassment from their supervisors not given to similarly situated male employees.

45. Plaintiff claims damages.

**FIFTH CAUSE OF ACTION - BREACH OF CONTRACT**

46. Plaintiff restates the claims in paragraphs 1 through 10 as if restated here in full.

47. Although New York state is an at-will employment state, it recognizes employment contracts based upon oral promises supported by documentation or statements in the employee handbook - see Rules for the Administration of the Civil Services Law in the City of Ithaca (effective May 1, 2008).

48. Defendant violated its own due process for termination, ignoring Rule XIV, item 5 of the

Complaint

- 11

Probationary Term, which states "The appointing

authority and supervisor of a probationer will

carefully evaluate the probationer's work performance

of the duties and responsibilities of the position.  A

probationer whose services are to be terminated for

unsatisfactory service shall be given written notice

prior to such termination and, upon request, shall be

granted an interview with the appointing authority or

his/her representatives. (p. 16, Rules for the

Administration of the Civil Service Law in the City of

Ithaca, May 1, 2008)".

49.  Plaintiff received no written notification of
unsatisfactory service.

50.  Plaintiff reasonably relied on said language to her
detriment, and claims damages.

**STATEMENT OF RELIEF SOUGHT**

In all the above causes of action, Plaintiff claims lost

wages, loss of employment, punitive damages, attorney's

fees, and such other and further relief as the court may

deem just and proper.  Plaintiff demands a trial by jury.

Complaint

- 12

State of **New York**
**County of Tompkins**
The foregoing instrument was acknowledged
before me this 27th day of FEBRUARY,
20 18, by NANCY KANE
Personally known to me or produced
NYDL as identification.
Signature Kevin J McGinn

KEVIN J MCGINN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MC6367120
Qualified in Tompkins County
My Commission Expires 11-13-2021

Dated this 27th of February,
2018

Nancy Kane, Plaintiff

**Attachments:**

Exhibit A:  Right to sue letter from the Equal Employment

Opportunity Commission

Complaint

- 13