IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NANCY KANE,

                              Plaintiff,          Civil Action No.
                                                  3:18-CV-0074 (DEP)

        v.

CITY OF ITHACA,

                              Defendant.

_____

APPEARANCES:                                 OF COUNSEL:

FOR PLAINTIFF:

NANCY KANE, *Pro se*
2735 Slaterville Road
Brooktondale, NY 14817

FOR DEFENDANT:

HON. AARON O. LAVINE               KEVIN M. LEVINE, ESQ.
City of Ithaca Attorney            Assistant City Attorney
108 East Green Street
Ithaca, NY 14850

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

This is an action brought by *pro se* plaintiff Nancy Kane against the City of Ithaca ("City") arising from her five-month employment with the City. Plaintiff's complaint asserts a number of causes of action, including violations of (1) the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*; (2) Title VII of the Civil Rights Act of 1964, ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; (3) the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 *et seq.* and the Public Employee Safety & Health Act ("PESHA"), N.Y. Labor Law § 27-a; (4) New York State public policy; and (5) provisions of a purported implied employment contract.

Currently pending before the court is a motion brought by the City seeking dismissal of all of plaintiff's claims, with the exception of her ADA cause of action, pursuant to Rule 12 of the Federal Civil Rules of Civil Procedure. In its motion, the City argues that the court lacks jurisdiction to adjudicate plaintiff's non-ADA claims, and that those causes of action fail to state claims upon which relief may be granted. For the reasons set forth below, the City's motion is granted in part, but otherwise denied.

## I.    BACKGROUND[1]

Plaintiff was appointed to a probationary position with the City as a Recreation Program Coordinator on or about May 16, 2016. Dkt. No. 7 at 2, 11-12. Plaintiff's complaint alleges that during the course of her employment she witnessed a number of PESHA and/or OSHA violations. Dkt. No. 7 at 5-8. In particular, plaintiff claims that on September 18, 2016, while working for the City, she was notified by a private citizen that a hypodermic needle had been discovered on a soccer field. *Id.* at 5. Although plaintiff disposed of the needle in accordance with certain professional training undertaken at her own expense, she alleges that, when she notified "[d]efendant,"[2] she was instructed that "she should have put it in an empty plastic bottle, and brought it to her home." *Id.*

On September 25, 2016, plaintiff notified "[d]efendant" that a trash can in Cass Park was "overflowing with dog waste, food, standing water,

_____

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

[2]      At several points throughout her complaint, plaintiff makes reference to certain conduct undertaken by unnamed defendants. *See, e.g.,* Dkt. No. 7 at 5-6, 8. Because the complaint only names the City as a defendant, and does not identify a specific individual that is responsible for the conduct alleged, it remains unclear to whom those allegations refer.

and trash." Dkt. No. 7 at 5. In response, an unidentified City employee told plaintiff that her job duties included emptying trash and maintenance of restrooms. *Id.* Although plaintiff asked the City to provide her training for disposing of various items, including dead animals and human waste products, the request was denied. *Id.* at 5-6. Instead, in response to plaintiff's requests for training, "[d]efendant told [p]laintiff that she was unable to intuit her job requirements after being on the job for several months, and that she could not be trusted." *Id.* at 8. On September 27, 2016, plaintiff was informed by the "longtime director of the [Ithaca Youth Bureau] soccer program" that "no male had ever been told" to take responsibility for "cleaning at Cass Park soccer practice fields." *Id.* at 11.

Plaintiff's complaint also includes allegations that, during her employment with the City, she "was told that she would not [sic] given [sic] responsibility for working on the football league as part of her job, because she is a woman[.]" Dkt. No. 7 at 10. Instead, plaintiff "agreed" to work as the supervisor of the cheerleading program. *Id.* at 8, 10. In that capacity, plaintiff informed "[d]efendant" that, in order to comply with copyright laws, the City must pay for licensing to use certain proprietary music during a cheerleading competition. *Id.* at 9. "Defendant dismissed [plaintiff]'s concerns, [and] . . . recommended that she not pay for licensing." *Id.*

4

Plaintiff alleges that her employment was terminated, in part, because she paid for the licensing notwithstanding the City's response. *Id.*

In early September 2016, an incident occurred at a football game involving the cheerleading squad that plaintiff supervised and a member of the public. Dkt. No. 7 at 10. While plaintiff attempted to investigate the circumstances surrounding the incident, the referee of the football game refused to cooperate with plaintiff and became "verbally abusive and disrespectful." *Id.* Plaintiff alleges that she "filed a complaint with Michael Blakely-Armitage against [the referee]," but that it was ignored.[3] *Id.*

On October 28, 2016, after plaintiff made a purchase request for waste disposal equipment, her employment with the City was terminated. Dkt. No. 7 at 8. She alleges that the City did not comply with its own civil service provisions requiring that she be provided with written notice prior to her termination. *Id.* at 11-12.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action in New York State Supreme Court, Tompkins County, on September 19, 2017, and thereafter served the City with a summons with notice on January 12, 2018. Dkt. No. 1 at 1; Dkt. No.

---

[3]    The complaint does not otherwise identify Blakely-Armitage or disclose his relationship, if any, to the City. Dkt. No. 7 at 10.

1-1 at 2; Dkt. No. 12-1 at 3; *see also* Dkt. No. 2 at 1. The summons with notice indicated that the action involved allegations that the City violated the ADA, Title VII, and New York Executive Law § 296. Dkt. No. 1-1 at 2; Dkt. No. 2 at 1. On January 17, 2018, the City removed the action to this court.[4] Dkt. No. 1.

Plaintiff filed her complaint in this court on February 27, 2018. Dkt. No. 7. As was noted above, the complaint alleges that defendant violated the ADA, Title VII, the PESHA/OSHA, New York State public policy, and a claimed implied employment contract arising from the City's employee handbook. *See generally id.* at 1.

In lieu of an answer, the City filed the pending partial motion to dismiss plaintiff's complaint on March 20, 2018. Dkt. No. 12. In its motion, the City argues that the court lacks jurisdiction to adjudicate plaintiff's PESHA/OSHA, public policy, and breach-of-contract claims, and that, in any event, those claims are legally deficient.[5] *See generally* Dkt. No. 12-10. Plaintiff responded in opposition to the City's motion on April 23, 2018, Dkt. No. 16, and the City has since submitted a reply in further support of

---

[4]    This matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c) and Northern District of New York Local Rule 73.1. Dkt. No. 10.

[5]    Defendant does not seek dismissal of plaintiff's ADA claims at this time.

its motion. Dkt. No. 17.

III.    DISCUSSION

    A.    Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378

U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Personal Jurisdiction

In support of its pending motion to dismiss, defendant first contends that this court lacks "personal jurisdiction" over plaintiff's PESHA/OSHA, public policy, and contract claims because plaintiff's summons with notice, which was filed in New York State Supreme Court, Tompkins County, did not provide any notice to defendant concerning those specific causes of action. Dkt. No. 12-10 at 9-11. In making that argument, the City conflates principles applicable to jurisdiction over a party with the question of whether, under New York law, plaintiff may properly pursue causes of action not specifically referenced in her summons with notice, thereby engendering confusion. Indeed, the court has plainly acquired personal jurisdiction over the City. What is instead at issue seems to be whether New York's summons-with-notice provision should preclude plaintiff from pursuing certain claims not specifically referenced in her summons. To the

extent that the City argues that it was not properly apprised of plaintiff's claims under the New York Civil Practice Law and Rules ("C.P.L.R."), the argument fails.

In New York, a plaintiff may commence an action against a municipal entity by delivering a summons to the mayor, comptroller, treasurer, counsel, or clerk. N.Y. C.P.L.R. § 311. The summons may be served with or without a complaint. N.Y. C.P.L.R. § 3012. If the summons is unaccompanied by a complaint, however, it must "contain or have attached thereto a notice stating the nature of the action and the relief sought, and. . . the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305(b). "Notice" for purposes of section 305(b), has been described as "at least basic information concerning the nature of plaintiff's claim and the relief sought[.]" *Parker v. Mack*, 61 N.Y.2d 114, 117 (1984) (internal quotation marks omitted); *accord, MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009). "Absolute precision is not necessary[.]" *Viscosi v. Merritt*, 510 N.Y.S.2d 30, 31 (3d Dep't 1986) (citation omitted); *accord, Wilber Nat'l Bank v. F & A Inc.*, 753 N.Y.S.2d 209, 211 (3d Dep't 2003).

In this case, plaintiff's summons included, in relevant part, the following notice to the City:

> [T]he nature of this action and the relief sought is to
> recover . . . damages, and injunctive and equitable
> relief, and attorney's fees, for violations under the
> Americans with Disabilities Act, for gender
> discrimination under Title VII of the Civil Rights Act
> of 1964, and for failure to provide reasonable
> accommodation under the Americans with
> Disabilities Act, and violations of New York
> Executive Law section 296, . . . and in the case of
> your failure to appear, judgment will be taken
> against you by default for $1,000,000.00, with
> interest from the date the cause of action arose[.]

Dkt. No. 1-1 at 2. The court interprets the City's motion to argue that,

because the notice did not reference or otherwise specifically allude to

plaintiff's PESHA/OSHA, public policy, or breach-of-contract causes of

action, it was insufficient under New York law to permit plaintiff to pursue

those claims. Dkt. No. 12-10 at 9-11.

Courts applying New York's summons-with-notice provision have not

been overly demanding in determining whether claims not specifically

enumerated in a summons can nonetheless be pursued. *See Brehm v.

Tompkins Consol. Transit, Inc.*, No. 12-CV-0579, 2013 WL 2898053, at *3

(N.D.N.Y. June 13, 2013) (Suddaby, C.J.) ("[T]hose few New York State

Courts that have specifically addressed the issue presented by this action

have held that the dismissal of an entire complaint is inappropriate where a

notice stated only one of several claims asserted in the complaint." (citing

cases)). Because plaintiff's notice in this case identified causes of action

under the ADA (including failure to accommodate) and Title VII (specifically sex discrimination), I find that the City was provided with the type of "basic information" necessary to satisfy the generally liberal New York pleading rules. *See Darrow v. Krzys*, 689 N.Y.S.2d 773, 778 (3d Dep't 1999) (finding that the plaintiffs' summons with notice, which stated that the nature of the action was, *inter alia*, "negligence of defendant resulting in personal injury and loss of spousal services[,] . . . provided the necessary basic information and complied with CPLR 305(b)," and noting that "[a] liberal construction of the statutory requirement of the contents of the notice accompanying a summons served without a complaint is consistent with the general notice sufficient to comply with C.P.L.R. 305(b), even though it was more cryptic than we would desire" (internal quotation marks and alterations omitted)); *Clark v. City of Ithaca*, 652 N.Y.S.2d 819, 821 (3d Dep't 1997) (finding that the summons incorporated federal civil rights claims, and therefore satisfied C.P.L.R. § 305(b), despite stating only that the nature of the action was "negligence and personal injury; assault; battery, malicious prosecution; false arrest and false imprisonment" (internal quotation marks and alteration omitted)); *Rowell v. Gould, Inc.*, 508 N.Y.S.2d 794, 795 (4th Dep't 1986) (concluding that a summons with notice was sufficient for purposes of C.P.L.R. § 305(b) where the notice

stated "[t]he nature of th[e] action [was] negligence" (internal quotation marks omitted)). Accordingly, the City's motion is denied to the extent is seeks dismissal of plaintiff's PESHA/OSHA, public policy, and contract causes of action based on lack of personal jurisdiction.

C.     PESHA/OSHA and Public Policy Claims

In her complaint, plaintiff asserts a cause of action under both PESHA and OSHA, as well as a claim based on allegations that the City violated public policy by terminating her employment because she insisted on complying with copyright laws. Dkt. No. 7 at 4-10. As the City argues, those claims fail as a matter of law.

It is well-established that neither PESHA nor OSHA provides for a private right of action. *See Gammons v. City of N.Y.*, 25 N.E.3d 958, 963 (2014) ("PESHA does not contain an express private right of action[.]" (citation omitted)); *Donovan v. Occupational Safety & Health Review Comm'n*, 713 F.2d 918, 926 (2d. Cir. 1983) ("Under OSHA, employees do not have a private right of action"). In addition, New York law provides that a term of employment may be terminated for any reason by either the employer or employee when the term is for an indefinite period of time, and does not recognize a public policy exception to this general rule for the dismissal of at-will employees, including exceptions for employees

who reveal their employer's illegal activities. *Lobosco v. N.Y. Tel. Co.*, 751 N.E.2d 462, 465 (2001). Accordingly, the City's motion to dismiss plaintiff's PESHA/OSHA and public policy claims is granted.

### D.    Title VII Sex Discrimination

Plaintiff's complaint alleges that defendant discriminated against her based on her sex when (1) she was directed to clean park facilities when no male previously occupying her position had been asked to do so; (2) she was not permitted to "work[] on the football league" and "agreed to work with the cheerleaders instead"; and (3) the individual to whom she complained disregarded her grievance concerning a football referee's conduct toward her. Dkt. No. 7 at 10-11. In support of its motion to dismiss, the City contends the complaint fails to state a plausible Title VII cause of action because there are no allegations that it took any adverse action against plaintiff. Dkt. No. 12-10 at 21-24.

To state a *prima facie* Title VII discrimination claim, a complaint must allege that (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position from which she was terminated or precluded; (3) the defendant took some adverse employment action against the plaintiff; and (4) "the adverse action occurred under circumstances giving rise to an inference of discrimination." *United States v. Brennan*, 650 F.3d

14

65, 93 (2d Cir. 2011).

Adverse employment actions are "materially adverse" changes in employment, and must be more disruptive than a typical inconvenience or change in job duties. *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d. Cir. 2000). Although a failure to hire, termination of employment, or a demotion are the most obvious examples, adverse actions can also include more subtle changes in circumstances such as reduced wage or salary, loss of benefits, assignment of a lesser title, or significantly reduced material responsibilities. *Galabya*, 202 F.3d at 640.

Turning first to plaintiff's allegations that she was required to clean park facilities in her capacity as Recreation Program Coordinator, even though no male in that position had ever been asked to undertake the same responsibilities, I find that this allegation plausibly alleges adverse action. Taking the allegations in plaintiff's complaint as true, and liberally construing the pleading in light of her *pro se* status, plaintiff contends that her job responsibilities did not include emptying the trash and maintaining restrooms in city parks until September 25, 2016, when she notified an unidentified individual employed by the City that a trash can in Cass Park was overflowing with waste. Dkt. No. 7 at 5. Two days later, during a meeting "as part of her supervisory duties" with the Ithaca Youth Bureau

soccer program director, plaintiff learned that no male that had previously held plaintiff's position had ever been asked to clean park facilities, suggesting that it was her sex that motivated the City's assignment of those additional responsibilities. *Id.* at 11. According to her complaint, plaintiff was asked to dispose of dead animals, human waste, used condoms, and hypodermic needles – all without any safety training or appropriate disposal resources. *Id.* at 5-6. Although there are no allegations in the complaint that plaintiff's new job duties resulted in a demotion in title or status, or that her salary was reduced, the complaint sufficiently alleges that the City's imposition of the additional responsibilities affected plaintiff's job "in a materially negative way." *Patrolmen's Benevolent Ass'n of the City of N.Y. v. The City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2002); *see Collins v. State of Ill.*, 830 F.2d 692, 702 (7th Cir. 1987) ("Title VII does not limit adverse job action to strictly monetary considerations. One does not have to be an employment expert to know that an employer can make an employee's job undesirable or even unbearable without money or benefits ever entering into the picture."); *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 364 (2d Cir. 1980) (finding that transferring the plaintiff from teaching at a junior high to an elementary school constituted adverse action because it was a "radical

change in the nature of the work" and "interfer[ed] with a condition or privilege of employment adversely affecting [the plaintiff's] status"). Accordingly, I find that plaintiff's sex discrimination claim survives defendant's motion to the extent she contends that she was made to clean and maintain park facilities in a manner not required by her male counterparts.

Plaintiff also contends that she was subjected to sex discrimination based on the following allegations:

> 39. On or about July 26, 2016, Plaintiff was told that she would not [be] given responsibility for working on the football league as part of her job, because she is a woman, and the other football league directors would not respect her.

> 40. Although not happy, Plaintiff agreed to work with the cheerleaders instead.

Dkt. No. 7 at 10. Even assuming these sparse allegations are true, they are not sufficient to allege a plausible adverse employment action by defendant. The fact that an employee does not receive a desired or requested employment assignment alone does not constitute adverse action. *Valenti v. Massapequa Free Sch. Dist.*, No. 09-CV-977, 2012 WL 1038811, at *14 (E.D.N.Y. Mar. 28, 2012); *see also Rodriguez*, 2016 WL 951524 at *4 ("The fact that Plaintiff was not chosen for a position as a

Saturday math academy teacher is not an adverse employment action.");
*Bright v. Le Moyne College*, 306 F. Supp. 2d 244, 254 (N.D.N.Y. 2004)
(Munson, J.) ("That plaintiff expressed a preference for one shift is
insufficient to conclude that her transfer was an adverse action."); *Ruggieri
v. Harrington*, 146 F. Supp. 2d 202, 217 (E.D.N.Y. 2001) ("Ruggieri simply
suffered no adverse employment action as a result of being denied the
occasion to serve as department chair and to teach certain summer
courses that she wanted to teach[.]"); *Castro v. N.Y.C. Bd. of Educ. Pers.
Dir.*, 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("While
adverse employment actions extend beyond readily quantifiable losses, not
everything that makes an employee unhappy is an actionable adverse
action."). Accordingly, the City's motion to dismiss the portion of plaintiff's
sex discrimination claim based on allegations that she was given
responsibility of the cheerleading team, rather than the football team, is
granted.[6]

Finally, plaintiff's complaint alleges that Michael Blakely-Armitage did
not take any action after she complained to him regarding the incident in
September 2016, occurring between her and a football referee, during

---

[6]     While not sufficient, standing alone, to support a plausible claim of
discrimination, plaintiff's allegations regarding her job assignment could evidence
gender bias on the part of plaintiff's supervisors.

which the referee was "verbally abusive and disrespectful[.]" Dkt. No. 7 at 10. Her complaint, however, does not further identify the referee or indicate whether, and, if so, in what capacity, he or Blakely-Armitage is employed by the City. In addition, plaintiff's complaint fails to allege facts plausibly suggesting that either the referee's comments to plaintiff or Blakely-Armitage's failure to investigate her complaint were motivated by her sex. It should be noted, moreover, that an employer's failure to investigate a discrimination complaint does not alone constitute an adverse employment action. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). Accordingly, the City's alleged failure to pursue plaintiff's complaint against a football referee does not constitute adverse employment action.

E.    Contract Claim

Plaintiff asserts a breach-of-contract cause of action based on an allegation that, when her employment was terminated, the City failed to provide her with written notification in accordance with its civil service laws. Dkt. No. 7 at 12. Liberally construed, her complaint appears to allege that the City's rules created an implied employment contract between plaintiff and the City limiting the City's ability to terminate her employment. In its motion, the City contends that local civil service rules cannot form the

basis of a breach of contract claim, and that such claims must be brought in a proceeding in state court under Article 78 of the C.P.L.R. Dkt. No. 12-10 at 15-20.

To state a cognizable contract claim under New York State common law, a complaint must allege facts plausibly suggesting (1) the existence of a contract between the parties, (2) performance under the contract by the plaintiff, (3) that the defendant breached the contract, and (3) the plaintiff suffered damages as a result of the breach. *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). In this case, although plaintiff has alleged that the civil service laws created an implied contract between her and the City, the court has found no legal support for this proposition. Moreover, even assuming the civil service laws can give rise to a contract between the parties, the City's Rule XIV, upon which plaintiff relies, only requires the City to provide prior written notice of unsatisfactory service. Dkt. No. 7 at 12. Specifically, the rule states as follows:

> The appointing authority and supervisor of a probationer will carefully evaluate the probationer's work performance of the duties and responsibilities of the position. A probationer whose services are to be terminated for unsatisfactory service shall be given written notice prior to such termination and, upon request, shall be granted an interview with the appointing authority or his/her representatives.

Dkt. No. 12-8 at 17. Accordingly, the City's civil service provisions only

impact the City's obligations concerning the manner in which it must notify an employee of termination. The rule does not, however, restrict the City's authority to terminate plaintiff's at-will, probationary employment for any reason and at any time. *See Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) ("In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party.").

In addition, even assuming there is authority for the proposition, as suggested by plaintiff, to the effect that a municipality's civil service provisions can be analogized to a policy set forth in an employee handbook, Dkt. No. 16 at 9, to state a cognizable implied-contract claim based on a defendant's violation of a handbook policy, a plaintiff must allege that she relied on the policy to her detriment. *Baron*, 271 F.3d at 85. Here, plaintiff only conclusorily alleges that she "reasonably relied on [the written notice requirement] to her detriment[.]" Dkt. No. 7 at 12. There are no other allegations in the complaint describing the manner in which plaintiff relied upon Rule XIV or what harm she suffered in relying upon the rule.

Finally, plaintiff's contract claim also fails because it challenges the City's decision to terminate her employment, a challenge that must be

heard in New York State court in a proceeding brought pursuant to Article 78 of the C.P.L.R. *See Finley v. Giacobbe*, 79 F.3d 1285, 1292 (2d Cir. 1996) ("[A]rticle 78 proceedings are proper where. . . a public employee contests an official agency decision to terminate her [employment]."); *Ingrassia v. Cnty. of Sullivan, N.Y.*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003) ("[T]he gravamen of plaintiff's Complaint is a challenge of defendant's decision to terminate her employment. As a result, plaintiff's claims should have been presented first by way of an article 78 proceeding."); *Gutt v. Nassau Health Care Corp.* No. 04-CV-0057, 2005 WL 3605273, at *4 (E.D.N.Y. Mar. 23, 2005) ("Plaintiff cannot cast her challenge to her termination as a breach of contract clam to circumvent the Article 78 requirement[.]").

For the foregoing reasons, the City's motion to dismiss plaintiff's breach of contract claim is granted.[7]

---

[7]     It is worth noting that plaintiff's contract claim is also likely barred by the governing statute of limitations. Article 78 proceedings are subject to a four-month statute of limitations, N.Y. C.P.L.R. § 217(1), which, in actions involving employment-termination disputes, begins to run on the effective date of the plaintiff's dismissal. *Gutt*, 2005 WL 3605273, at *4. In this case, plaintiff's complaint alleges that defendant terminated her employment on or about October 28, 2016. Dkt. No. 7 at 2. Plaintiff did not commence this action in New York State Supreme Court, however, until September 19, 2017, almost one year later. Dkt. No. 1-1 at 2.

IV.  <u>SUMMARY AND ORDER</u>

Plaintiff's complaint asserts several causes of action against the City. Certain of those claims, however, fail as a matter of law, including plaintiff's PESHA/OSHA and breach-of-contract claims. In addition, only one of the allegations offered in support of plaintiff's Title VII sex discrimination cause of action – in particular, that she was given maintenance duties that her male counterparts were not assigned – supports a plausible sex discrimination claim.

Accordingly, it is hereby

ORDERED that defendant's motion to dismiss (Dkt. No. 12) be GRANTED in part and DENIED in part, as follows:

(1)  Plaintiff's PESHA/OSHA and contract claims are DISMISSED.

(2)  Plaintiff's Title VII sex discrimination claims are DISMISSED, except with respect to plaintiff's allegations that she was assigned maintenance duties at City parks that her male counterparts were not assigned; and it is further

ORDERED that, based upon the above determination, plaintiff's ADA claim and the portion of plaintiff's Title VII claim relating to the assignment of maintenance duties to plaintiff survives for trial; and it is further

ORDERED that the clerk of the court serve a copy of this decision and order upon the parties in accordance with this court's local rules.

Dated:    August 6, 2018
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge